CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 22 2016

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CALEB QUESENBERRY, )
)
    Plaintiff, )
) Civil Action No. 7:16-cv-00066
v. )
)
SOUTHERN ELEVATOR COMPANY, INC., et al., ) By: Hon. Michael F. Urbanski
) United States District Judge
    Defendants. )
)

## MEMORANDUM OPINION

Plaintiff Caleb Quesenberry filed this negligence action in Roanoke City Circuit Court, seeking damages for injuries he allegedly sustained when an elevator he was using dropped at a high rate of speed in the Poff Federal Building in Roanoke, Virginia. Quesenberry named three defendants: Southern Elevator Company, Inc., Northern Management Services, Inc., and Southern's employee Louis Cruz With Northern's consent, Southern removed this case to federal court on February 19, 2016, asserting the court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Southern contends there is complete diversity of citizenship between Quesenberry and the proper defendants to the case—Southern and Northern—and the amount in controversy exceeds the jurisdictional requirement. With respect to defendant Cruz, who destroys diversity, Southern argues he has been fraudulently joined with the express purpose of defeating diversity jurisdiction and that no cognizable legal claim lies against him.

Quesenberry moves to remand, arguing Cruz is a proper party defendant and the court therefore lacks subject matter jurisdiction over this case. Quesenberry asserts that under Virginia law, an employee can be held liable to a third party for misfeasance, an affirmative act performed improperly. Quesenberry contends that his complaint in this case alleges just that—that Cruz negligently cleared the elevator for service in spite of a fault code that could indicate a broken circuit

board. Southern and Cruz maintain that the allegations against Cruz are allegations of nonfeasance, a failure to act, not misfeasance, and Quesenberry therefore has not stated a viable claim against Cruz under Virginia law.

For the reasons set forth below, the court agrees with Quesenberry and finds defendants have failed to meet their burden of establishing fraudulent joinder. Because the court lacks diversity jurisdiction over this matter, Quesenberry's motion to remand (ECF No. 17) will be **GRANTED** and this case **DISMISSED**.

## I.

Quesenberry filed this personal injury case in Roanoke City Circuit Court on January 6, 2016. His claims arise out of an incident on August 11, 2014 in which an elevator abruptly dropped at a high rate of speed in the Poff Federal Building. Quesenberry alleges that at 10:50 a.m. that day, the subject elevator malfunctioned and displayed fault code "QPRAM Comm. Failure/warn." Compl., ECF No. 1-3, at ¶¶ 8-9. Quesenberry claims this code "is indicative of, among other things, a broken circuit board," id. at ¶ 9, and that Cruz was dispatched on behalf of Southern to service this elevator, id. at ¶ 8. Quesenberry asserts that Cruz knew or should have known that the "QPRAM Comm. Failure/warn" code could indicate a broken circuit board and there was no way to test for a broken circuit board on site; yet, in spite of that knowledge, Cruz placed the elevator back in service after running tests for other failures, all of which were negative. Id. at ¶¶ 10-12. Later that same day, at approximately 1:30 p.m., Quesenberry entered the elevator and, while in transit, the elevator "dropped at a high rate of speed for a considerable distance, actually and proximately causing the plaintiff's physical injuries." Id. at ¶ 13. Quesenberry alleges the defendants Southern, Northern, and Cruz owed a duty of ordinary care in the maintenance and repair of the elevator and that defendants "negligently failed to maintain and repair the elevator after the first malfunction, for the reasons stated herein, incorporated by reference, actually and proximately

2

causing the plaintiff's injuries." Id. at ¶ 19. Quesenberry further alleges that Cruz is liable for punitive damages because he acted willfully and wantonly given the fact "that the troubleshooting guide suggested the replacement and testing of the circuit board as a solution to the fault code displayed prior to the plaintiff's injury." Id. at ¶ 20.

Southern filed a notice of removal on February 19, 2016 with the consent of Northern, asserting this court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332. Not. of Removal, ECF No. 1, 1-1. Southern asserts there is complete diversity of citizenship between Quesenberry, a citizen of Virginia, Southern, a citizen of North Carolina, and Northern, a citizen of Idaho. As for Cruz, also a Virginia citizen, Southern argues he "has been fraudulently joined with the express purpose of defeating the Court's jurisdiction and that no legal claim cognizable in the Commonwealth of Virginia lies against Mr. Cruz." Not. of Removal, ECF No. 1, at ¶ 16. Quesenberry moves to remand, arguing his complaint alleges a claim of misfeasance against Cruz that is cognizable under Virginia law, and the court therefore lacks diversity jurisdiction over this matter. Southern and Cruz respond that Quesenberry "solely alleges that Mr. Cruz failed to 'prevent, eliminate and warn of [the danger],'" and thus no cause of action can be maintained against this employee defendant. Resp. to Mot. to Remand, ECF No. 17, at 8.

None of the parties requested oral argument on the pending motion to remand. The issues have been fully briefed and are ripe for adjudication.

## II.

Federal courts are courts of limited jurisdiction. "The threshold question in any matter brought before a federal court is whether the court has jurisdiction to resolve the controversy involved." 17th Street Assoc., LLP v. Markel Int'l Ins. Co. Ltd., 373 F. Supp. 2d 584, 591 (E.D. Va. 2005). Section 1441(a) of Title 28 of the United States Code permits a defendant to remove an action to a federal district court if the plaintiff could have brought the action in federal court

3

originally. The party seeking removal bears the burden of establishing federal jurisdiction, and because removal jurisdiction raises significant federalism concerns, the removal statute must be strictly construed. Mulcahey v. Columbia Organic Chem. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). "If federal jurisdiction is doubtful, a remand is necessary." Id.

In its notice of removal, Southern asserts that this federal court has original jurisdiction over this personal injury case pursuant to 28 U.S.C. § 1332. Section 1332 provides that federal courts have diversity jurisdiction over actions in which the matter in controversy exceeds the sum of $75,000 and the dispute is between citizens of different states. This statute requires "'complete diversity of citizenship,'" Carden v. Arkoma Assoc., 494 U.S. 185, 187 (1990), between "real and substantial parties to the controversy," Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460 (1980). "This 'complete diversity' rule, when coupled with other rules, makes it difficult for a defendant to remove a case if a nondiverse defendant has been party to the suit prior to removal." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). The doctrine of fraudulent joinder, however, allows a district court to assume jurisdiction over a case in which a nondiverse defendant is named at the time of removal, dismiss the nondiverse defendant, and retain jurisdiction. Id.

> "Fraudulent joinder" is a term of art, it does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or in fact no cause of action exists. In other words, a joinder is fraudulent if "there [is] no real intention to get a joint judgment, and ... there [is] no colorable ground for so claiming."

AIDS Counseling & Testing Centers v. Grp. W Television, Inc., 903 F.2d 1000, 1003 (4th Cir. 1990) (quoting Lewis v. Time, Inc., 83 F.R.D. 455, 460 (E.D. Cal. 1979)).

> In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either:
>
> "[T]hat there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or

4

> [T]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts.["]

Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993) (quoting B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981) (emphasis in original)). "The burden on the defendant claiming fraudulent joinder is heavy: the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor." Id. at 232-33 (citing Poulos v. Naas Foods, Inc., 959 F.2d 69, 73 (7th Cir. 1992)). The Fourth Circuit has said "[t]his standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999) (citing Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992)). "A claim [against a nondiverse defendant] need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted." Marshall, 6 F.3d at 233 (citing 14A Charles A. Wright et al., Federal Practice & Procedure § 3723, at 353–54 (1985)). In determining "whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'" AIDS Counseling, 903 F.2d at 1004 (quoting Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964)).

### III.

Southern raises no suggestion of outright fraud in relying on the fraudulent joinder doctrine. Thus, the question to be answered is whether there is no possibility that Quesenberry would be able to establish a cause of action against Cruz in state court. Marshall, 6 F.3d at 232. "The 'no possibility' standard 'is more properly applied not rigidly' but reasonably." Linnin v. Michielsens, 372 F. Supp. 2d 811, 818 (4th Cir. 2005) (quoting Riverdale Baptist Church v. Certaineed Corp., 349 F. Supp. 2d 943, 948 (D. Md. 2004)). The Linnin court explained that what is meant by this standard is "'that there is no reasonable basis for the district court to predict that the plaintiff might

5

be able to recover against an in-state defendant."[1] Id. at 819 (quoting Smallwood v. Ill. Cen. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004)); see Cordill v. Purdue Pharma, L.P., No. 1:02CV00121, 2002 WL 31474466, at *2 n.5 (W.D. Va. Nov. 5, 2002) ("[T]he 'no possibility' language cannot be taken literally and [ ] what is meant is that there is 'no reasonable basis' for predicting liability on the claims alleged." (quoting In re Rezulin Prods. Liability Litig., 133 F. Supp. 2d 272, 280 n.4 (S.D.N.Y. 2001))).

In this negligence case, Southern and Cruz maintain that there is no possibility that Quesenberry could prevail against nondiverse defendant Cruz because, under Virginia law, an employee is not liable to a third party for his failure to perform some act which ought to have been performed. Defs.' Resp. to Mot. to Remand, ECF No. 17, at 5.

> It is well settled that if an employee of a corporation through his or her fault injures a party to whom he or she owes a personal duty, the

---

[1] To clarify, "the crucial question" appears to pertain to the "likelihood of liability, not the likely success of collection efforts." Myers v. Air Serv Corp., No. 1:07cv911, 2008 WL 149136, at *2 (E.D. Va. Jan. 9, 2008).

The Eastern District of Virginia in Linnin acknowledged an "inherent tension" in the fraudulent joinder standard articulated by the Fourth Circuit in AIDS Counseling, adopted from Lewis v. Time, Inc., 83 F.R.D. 455, 460 (E.D. Cal. 1979), which states:

> "Fraudulent joinder" . . . is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or in fact no cause of action exists. In other words, a joinder is fraudulent if "there [is] no real intention to get a joint judgment, and ... there [is] no colorable ground for so claiming."

903 F.2d at 1003. According to Linnin, this standard makes unclear whether courts "should simply determine whether 'no cause of action is stated' or whether the plaintiff has 'no real intention to get a joint judgment.'" 372 F. Supp. 2d 811 (quoting AIDS Counseling, 903 F.2d at 1003). The court in Linnin ultimately found both that plaintiff had no intention of getting a joint judgment against the employee and his employer, and that plaintiff had no possibility of succeeding in her claims against the employee Michielsens—indeed, in Linnin, "Plaintiff ha[d] nothing to gain from joining Defendant Michielsens except for defeating diversity." 372 F. Supp. 2d at 824.

In a later (albeit unpublished) decision out of the Eastern District of Virginia, the court held "[a] defendant's inability to pay a judgment, without more, does not render his joinder fraudulent." Myers, 2008 WL 149136, at *2. The Myers court closely examined the case of Parks v. New York Times Co., 308 F.2d 474 (5th Cir. 1962), from which both the Fourth Circuit in AIDS Counseling and the district court in Lewis took their fraudulent joinder test, noting Parks draws from Moore's Commentary on the United States Judicial Code 234-36 (1949), specifically quoting a passage that reads: "If the plaintiff has stated a cause of action against the resident defendant, that is normally sufficient to prevent removal. The motive for joining such a defendant is immaterial, *even when the defendant is judgment-proof.*" Myers, 2008 WL 149136, at *2 (emphasis added in Myers). Thus, the Myers court concluded the test for fraudulent joinder is not whether the employee defendant is impecunious, but whether there is no reasonable basis for predicting liability on the claims alleged.

6

> employee is liable personally to the injured third person. . . . In cases involving tort liability of an employee to a third person, Virginia's Supreme Court has resolved the question of whether the employee owes a duty to the third person by denominating the employee's alleged act as one of misfeasance or nonfeasance. An employee may be liable for his own misfeasance (i.e., performance of an affirmative act done improperly), but not for his own nonfeasance (i.e., omission to do some act which ought to be performed). Compare, Miller v. Quarles, 242 Va. 343, 410 S.E.2d 639 (1991) (in action against employee of loan broker to recover for negligently procuring loan, employee has tort liability for injuries to third person resulting from misfeasance while acting within scope of employment) with Turner v. Corneal, 156 Va. 889, 159 S.E. 72 (1931) (in action by prospective tenant against rental agent for damages, plaintiff must show some positive act of negligence on the part of rental agent).

Harris v. Morrison, Inc., 32 Va. Cir. 298 (1993); see VanBuren v. Grubb, 284 Va. 584, 591-92, 733 S.E.2d 919, 923 (2012) ("It has long been settled in Virginia that 'employers and employees are deemed to be jointly liable and jointly suable for the employee's wrongful act.'" (quoting Thurston Metals & Supply Co. v. Taylor, 230 Va. 475, 483-84, 339 S.E.2d 538, 543 (1986)); see also Miller v. Quarles, 242 Va. 343, 347, 410 S.E.2d 639, 642 (1991) ("Both principal and agent are jointly liable to injured third parties for the agent's negligent performance of his common-law duty of reasonable care under the circumstances.").

Southern and Cruz contend that Quesenberry's complaint alleges nonfeasance, not misfeasance, as it claims only that Cruz "'failed to maintain and repair the elevator after the first malfunction' and failed to perform certain testing on the elevator. (Compl. ¶ 14, 19). Thus, Plaintiff essentially asserts that Mr. Cruz failed to perform certain acts which ought to have been done." Defs.' Resp. to Mot. to Remand, ECF No. 17, at 7. Specifically, Southern and Cruz argue:

> There is no allegation in the case that Mr. Cruz caused the elevator to malfunction. Nor is there an allegation that Mr. Cruz performed an affirmative act improperly—i.e., attempted to fix the elevator, but performed the repairs negligently. Rather, it is evident from Plaintiff's Complaint that Mr. Cruz failed to conduct certain tests on the elevator and did not perform any repairs. His failure to perform these actions form the very basis of Plaintiff's Complaint.

7

Id. at 8.

To be sure, Quesenberry's complaint does allege certain failures or omissions on the part of Cruz—e.g., that he failed to test the circuit board, Compl., ECF No. 1-3, at ¶ 14, failed to replace the circuit board, id. at ¶ 12, and failed to maintain and repair the elevator after the first malfunction, id. at ¶ 19. The complaint also alleges an affirmative act by Cruz, however—that he placed the malfunctioning elevator back in service:

> 11. At the time of the service call, based upon the troubleshooting guide for the subject elevator and/or Cruz's specialized training, education and experience, Cruz knew, or should have known, that the "QPRAM Comm. Failure/warn" code could indicate a broken circuit board.
>
> 12. In spite of the abovementioned knowledge, the presence of at least three other operable elevators in the vicinity and several others building wide, and knowledge that there was no way for anyone to test whether the circuit board was in fact broke on site, **Cruz placed the elevator back in service** without replacing the circuit board, or taking the elevator out of service.

Id. at ¶¶ 11-12 (emphasis added). This act is alleged to have led directly to Quesenberry's injuries. Id. at ¶ 15.

Thus, this case is unlike Linnin v. Michielsens, Saunders v. Boddie-Noell Enterprises, and Logan v. Boddie-Noell Enterprises, three cases on which defendants Southern and Cruz primarily rely. The decedent in Linnin was fatally injured in an aerial lift he was using to clean and paint a roller coaster at Busch Gardens amusement park in the course of his employment as a painter with Hartman-Walsh Painting Company. 372 F. Supp. 2d 811, 813-14 (4th Cir. 2005). Hartman-Walsh rented lifts from defendant Hertz Corporation. Three days prior to the accident, the painting company had complained to Hertz about a certain lift's lack of power. Hertz sent its employee Michielsens, a mechanic, to service the lift's engine. Michielsens tested all operations and attempted to test the drive controls by traveling up a hill, but the lift started to slide backwards. Michielsens

8

then contacted Hertz, which had the lift towed to a parking lot where it was neither tagged "out of service" nor disabled. When decedent Linnin used the lift three days later, it tipped over while he was painting, and he died. Id. at 814.

Linnin's wife and executor of his estate filed an action in state court alleging, inter alia, negligence, naming as defendants both Hertz and its employee Michielsens. Defendants removed the case to federal court asserting jurisdiction under 28 U.S.C. § 1332, claiming defendant Michielsens, who destroyed diversity, was fraudulently joined. Plaintiff moved to remand. The court found Michielsens was joined solely for the purpose of avoiding federal jurisdiction, dismissed him from the action, and retained jurisdiction. In holding there was no possibility of a successful claim against Michielsens, the Linnin court recognized:

> [T]his case is about a possible failure to inspect and warn on the *employer's* part about a machine's potential limitations, but it's not a case involving the faulty repair of a faulty engine on the *employee's* part because Defendant Michielsens was a mechanic who simply performed his job as he had been trained to do it.

372 F. Supp. 2d at 820. The court held there were no facts in the record demonstrating that Michielsens should have foreseen the lift's potential instability—when he test drove the lift three days before the accident, it "slid and got stuck. It did not tip over." Id. at 821. Additionally, "there is no evidence in the record that Defendant Michielsens had actual or constructive notice that the lift was dangerous or that he had 'special knowledge' that should have alerted him to the fact that the lift might tip over and injure the occupant." Id. at 822. Nor was there evidence of any connection between Michielsens and Linnin; Michielsens did not instruct Linnin to use a lift that was dangerous nor in any way affirmatively provide a dangerous product. Id. In fact, after he tested the lift three days prior to the accident, Michielsens reported the problem to his employer Hertz and "had nothing more to do with the lift or with the paint company's employees." Id. at 814. Any omission Michielsens could have conceivably committed would be "a duty owing to his employer,

9

rather than a positive act toward the plaintiff." Id. at 822-23 (citation omitted). On these facts, the court held there was "no possibility" Michielsens could be held liable under Virginia law. Id. at 823.

Linnin is distinguishable from the instant case in several respects. First, the proximity in time—Michielsens was called to repair the aerial lift three days prior to the accident, whereas Cruz was called to repair the elevator mere hours before the incident that left Quesenberry injured. Additionally, Michielsens had nothing to do with the lift after reporting the power problem to Hertz, whereas Cruz allegedly cleared and placed the elevator back in service despite the "QPRAM Comm. Failure/warn" code that had not been resolved. There was no evidence in Linnin that Michielsens knew or should have been aware of the lift's instability or propensity to tip over, which was the proximate cause of Linnin's injuries. In this case, on the other hand, it is alleged that Cruz knew or should have known, given his specialized training and knowledge, that the "QPRAM Comm. Failure/warn code" could mean a broken circuit board, which was the proximate cause of Quesenberry's injuries. Accordingly, defendants' reliance on Linnin is misplaced.

Defendants' citations to Logan v. Boddie-Noell and Saunders v. Boddie-Noell are equally unavailing. In Logan, plaintiff was an invitee at a Hardee's restaurant where she allegedly slipped on water that had accumulated on the restaurant floor. She filed suit against the restaurant and its store manager, Cindy Roberson, who destroyed diversity jurisdiction. Defendants argued upon removing the case that Roberson had been fraudulently joined. The court agreed, finding Roberson was in the kitchen at the time of the incident in question with no view of the area in which plaintiff fell. Roberson had no knowledge of how the water ended up on the floor and there was no evidence that Roberson herself had spilled the water or tracked it in from outside. 834 F. Supp. 2d 484, 489 (W.D. Va. 2011) (Kiser, J.). "Indeed, Plaintiff concede[d] in her deposition that only Roberson's failure to clean the floors and place warning signs caused her accident. Such failures constitute mere omissions and, therefore, cannot serve as the basis for imposing liability on Roberson." Id. (internal

10

citation omitted). Judge Kiser rejected plaintiff's argument that Roberson was in charge of restaurant operations and therefore was responsible for preventing dangerous conditions on the premises:

> Plaintiff plainly mischaracterizes nonfeasance as [mis]feasance. Although Roberson may have been responsible for the restaurant's overall operations, she performed no particular positive act that caused Plaintiff's injury. She, undisputedly, did not cause the defect; rather, she merely failed to prevent, eliminate, or warn of it. Plaintiff is correct that she performed the affirmative acts of clearing the sidewalk and putting down snow melt. The record, however, contains no evidence that the occurrence of those acts in and of themselves caused Plaintiff's injury. No affirmative aspect of Roberson's undertaking to clear the sidewalk caused water to accumulate on the restaurant floor. Rather, only her failure to perform these acts in a more thorough or complete manner conceivably had such an effect. Although clearing the sidewalk with greater frequency or deploying a greater quantity of snow melt might possibly have prevented Plaintiff's accident, Roberson's failure to perform these actions was just that—a failure and an omission. In sum, even if she negligently performed her duties, she did so only to the extent that she failed to take certain necessary precautionary measures

Id. at 490. Plaintiff also argued that Roberson's placement of warning codes outside the restaurant, but not in the dining room, was an affirmative act of misfeasance. The court disagreed, holding:

> Although Roberson may have failed to place cones in the dining room in part because she chose to use the available cones elsewhere, that decision does not convert her omission into an act. The thought process behind an omission cannot be characterized as an affirmative act. To accept such a characterization would be to obliterate Virginia law's distinction between nonfeasance and malfeasance because omissions often are a product of conscious decisions not to act.

Id. at 491-92. Unlike in the instant case, the allegations in Logan consisted solely of nonfeasance.

Saunders v. Boddie-Noell also involved allegations of nonfeasance and is thus distinguishable from the instant case. The plaintiff in Saunders alleged he was injured after biting down on a hard, foreign object in a hot dog from a Hardee's restaurant. He filed suit against

11

Boddie-Noell and two John Doe restaurant employees—John Doe 1 who allegedly prepared the adulterated hot dog, and John Doe 2 who was performing electrical work in the restaurant at the time. No. 7:08cv110, 2008 WL 2553047, at *1 (W.D. Va. June 25, 2008) (Turk, J.). The court was required to consider the John Doe defendants as Virginia citizens for removal purposes, and defendants argued that these employees had been fraudulently joined. The court held plaintiff's allegations "that defendants failed to shield the hot dog, failed to properly inspect the hot dog, and failed to observe the unnatural foreign object and remove it from the hot dog" constituted acts of nonfeasance, not misfeasance. Id. at *2. The court determined there was "no possibility" that the two John Doe defendants could be held liable under Virginia law and were therefore fraudulently joined. Id.

Unlike in Logan and Saunders, Quesenberry alleges more than nonfeasance against defendant Cruz. He alleges that Cruz caused the dangerous condition that lead to his injuries by affirmatively placing the elevator back in service in spite of an error code that he knew or should have known could signal a circuit board failure. This allegation is one of misfeasance that states a possible claim for relief under Virginia law. Cf. Ross v. Lee, No. 3:15cv566, 2016 WL 521529 (E.D. Va. Feb. 5, 2016) (granting motion to remand and rejecting fraudulent joinder argument where plaintiff alleged that store supervisor "took affirmative physical action in moving a leaking generator across the store, physically creating the spill" in which plaintiff fell and was injured); Wilson v. Ford, No. 4:15cv101, 2016 WL 521530 (E.D. Va. Feb. 5, 2016) (finding defendant failed to meet burden of proving fraudulent joinder where complaint alleged defendant employee struck plaintiff in the head with a cart as he pushed it through the store); Hall v. Walters, No. 3:13cv210, 2013 WL 3458256 (E.D. Va. July 9, 2013) (plaintiff asserted two theories of negligence against defendant employee—that the employee caused a green bean to be on the floor of the Kroger supermarket while working in the green bean section of the store just prior to the plaintiff's fall, and that he failed

12

to warn of the dangerous condition—and because plaintiff alleged defendant affirmatively performed some act improperly, he "sufficiently alleged a claim at this stage for which recovery in state court is at least possible"); Myers v. Air Serv. Corp., No. 1:07cv911, 2008 WL 149136 (E.D. Va. Jan. 9, 2008) (granting motion to remand and rejecting fraudulent joinder argument based on allegation that plaintiff's injury was caused because defendant employee negligently installed pins that affixed a wheelchair-accessible exit ramp to a shuttle bus).

In this case, it simply "cannot be said that no reasonable basis exists for holding [Cruz] liable" under Virginia law. Myers, 2008 WL 149136, at *3. Taking the allegations in the light most favorable to Quesenberry as it must, see Marshall, 6 F.3d at 232-33, the court finds that plaintiff has stated a possible right to relief against Cruz.

### IV.

For these reasons, the court holds that defendants have not carried their burden of proving fraudulent joinder and establishing the court has diversity jurisdiction over this action. As such, the motion to remand will be **GRANTED** and this case **DISMISSED** from the court's docket.

An appropriate Order will be entered.

Entered: 04-22-2016

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge